# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| BRADLEY M. PETERSON, PhD, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:22-cv-00276 |
| | : | |
| v. | : | Judge Edmund A. Sargus |
| | : | |
| KRISTINA M. JOHNSON, PhD, *et al.*, | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| Defendants. | : | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Kristina M. Johnson, PhD ("Defendant Johnson") and Bruce A. McPheron, PhD ("Defendant McPheron") (Defendant Johnson and Defendant McPheron, collectively, the "Defendants") hereby move to dismiss Plaintiff Bradley M. Peterson, PhD's ("Plaintiff") Complaint in its entirety as it fails to state any claim upon which relief may be granted. The reasons for this Motion to Dismiss (the "Motion") are set forth more fully in the accompanying Memorandum in Support.

Respectfully submitted,

*/s/ Catherine L. Strauss*
Catherine L. Strauss (0072980)
Abigail J. Barr (0092679)
ICE MILLER LLP
250 West Street
Columbus, Ohio 43215
Telephone: (614) 462-2700
Facsimile: (614) 462-5135
Catherine.Strauss@icemiller.com
Abigail.Barr@icemiller.com

*Counsel for Defendants Kristina M. Johnson, PhD, et al.*

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

In an effort to rehabilitate his emeritus status with The Ohio State University ("OSU"), Plaintiff alleges that OSU violated his Fourteenth Amendment right to due process when it revoked said emeritus status. Plaintiff, however, cannot manufacture a property right in his emeritus status where one simply does not exist. As such, this Court should dismiss Plaintiff's Complaint as a matter of law.

### I. FACTUAL BACKGROUND[1]

Plaintiff is a former Professor of Astronomy at OSU, having served as Chair of OSU's Department of Astronomy from 2006 until 2015. [Compl., ¶ 10]. Throughout his tenure with OSU, Plaintiff taught a variety of courses—from introductory astronomy to advanced astrophysics—to students of all levels. [Compl., ¶ 11]. Plaintiff was also involved with several organizations outside of OSU, such as the James Webb Space Telescope Advisory Committee and the Hubble Space Telescope Time Allocation Committee. [Compl., ¶ 12]. On June 30, 2015, Plaintiff voluntarily retired from employment with OSU, and in recognition of his service, OSU granted Plaintiff the honorific status of professor emeritus. [Compl., ¶ 13].

Despite having retired from OSU, Plaintiff continued his work in astronomy, working with different science-based academies to advance the study of astronomy. [Compl., ¶¶ 14-15]. In October 2018, when Plaintiff still maintained his emeritus status, David Weinberg, PhD, successor Chair of OSU's Department of Astronomy, informed Plaintiff that several women within the Department of Astronomy felt uncomfortable with Plaintiff's presence at OSU. [Compl., ¶¶ 13, 17]. Dr. Weinberg advised Plaintiff to avoid having one-on-one dinners with

---

[1] The following facts are identified from the allegations of Plaintiff's Complaint as they must be for the Court's consideration on a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Defendants do not admit the truth or accuracy of any of the allegations.

female colleagues and to refrain from hugs and other casual touch in the workplace. [Compl., ¶ 17]. Plaintiff allegedly obliged. [Compl., ¶ 17].

In April 2020, however, Dr. Weinberg initiated a complaint about Plaintiff with OSU's Office of Institutional Equity ("OIE") based on complaints received from three of Plaintiff's former colleagues. [Compl., ¶ 18]. The complainants alleged that Plaintiff had, among other things, inappropriately touched them and made offensive comments. [Compl., ¶¶ 22-28]. Upon receipt of the complaint, OIE initiated an investigation into the allegations against Plaintiff. [Compl., ¶ 29]. During his investigatory interview with OIE, Plaintiff admitted that he touched others while communicating but that his comments should not have been interpreted as sexual in nature. [Compl., ¶ 31]. While conducting its investigation, however, OIE received a fourth complaint against Plaintiff. [Compl., ¶ 35]. Similar to the other three complainants, the fourth complainant alleged that Plaintiff made her uncomfortable because he stood too close to her and occasionally touched her arm and shoulder while speaking. [Compl., ¶ 35].

Ultimately, the OIE investigation revealed that Plaintiff's actions amounted to a violation of OSU's Sexual Misconduct Policy, and OIE notified Plaintiff of same on February 1, 2021. [Compl., ¶ 42]. Based on OIE's findings, Interim Chair of Astronomy Todd Thompson, PhD and Divisional Dean Susan Olesik, PhD recommended to Executive Dean and Vice Provost of the College of Arts and Sciences Gretchen Ritter, PhD that OSU revoke Plaintiff's emeritus status. [Compl., ¶ 44]. Shortly thereafter, on February 18, 2021, Dr. Ritter endorsed to Defendant McPheron the recommendation of Drs. Thompson and Olesik. [Compl., ¶ 45]. On May 17, 2021, Defendant Johnson informed Plaintiff that she would be recommending revocation of Plaintiff's emeritus status during the upcoming Board of Trustees meeting. [Compl., ¶ 46]. The Board of Trustees accepted Defendant Johnson's recommendation and revoked Plaintiff's emeritus status

3

on May 20, 2021. [Compl., ¶ 47]. Nearly eight months later, on January 24, 2022, Plaintiff filed the instant matter. *See* Compl., generally.

## II. <u>LAW AND ARGUMENT</u>

Defendants bring the instant Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief *even if everything alleged in the complaint is true*." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993) (emphasis added). And while the Complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions…" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations and quotation marks omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Ultimately, Plaintiff "must show *entitlement* to relief." *League of Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.2007) (emphasis in original).

A court should dismiss a complaint under Fed.Civ.R. 12(b)(6) if it appears that the plaintiff cannot prove any set of facts that would entitle the plaintiff to relief. *See Twombly*, 550 U.S. at 561. Though factual allegations in a complaint are assumed true, courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Here, Plaintiff has failed to state a viable cause of action against Defendants for which he is entitled to relief.

### A. Plaintiff Cannot Demonstrate Any Deprivation Of Rights Guaranteed By The Fourteenth Amendment

At the crux of Plaintiff's Complaint is his contention that he had—and continues to have—a "constitutionally protected property interest in his emeritus status [with OSU]" and that OSU failed to offer him a disciplinary process to which he was purportedly entitled.[2] Compl., ¶¶ 50-51. Plaintiff also contends that he "has a constitutionally protected property interest in his employment by OSU." Compl., ¶ 64. However, as Plaintiff notes in his Complaint, he retired from OSU on June 30, 2015. Compl., ¶ 13. As such, when OSU's Board of Trustees revoked Plaintiff's emeritus status on May 20, 2021, Plaintiff was not an employee of OSU. For the purpose of analyzing whether Plaintiff possesses a viable claim under the Fourteenth Amendment, his relationship with OSU is important.

In the Sixth Circuit, absent some substantive adverse action regarding a professor's employment status, mere denial of emeritus status will not give rise to a claim under the Fourteenth Amendment because there is no property right in emeritus status. *See Samad v. Jenkins*, 845 F.2d 660 (6th Cir.1988) (affirming summary judgment in favor of defendant). The plaintiff in *Samad* was a professor at the University of Akron School of Law (the "University"). Following a series of disciplinary issues, the plaintiff executed an agreement with the University in which he agreed to either resign or retire from employment. At some point following his agreed-upon resignation, the plaintiff requested emeritus status with the University, but the

---

[2] It is worth noting that Plaintiff did not go through any type of disciplinary process prior to revocation of his emeritus status because Plaintiff was not an employee of OSU at the time his status was revoked. While there is a disciplinary process outlined for OSU faculty within O.A.C. 3335-5-04, those with emeritus status are explicitly exempt from that disciplinary process. See O.A.C. 3335-5-36(E) (outlining process through which OSU may revoke emeritus status). Indeed, the process set forth in O.A.C. 3335-5-36(E) is necessarily codified as separate and apart from OSU's disciplinary process for faculty *because* emeritus faculty are not employees nor do they possess a property interest in their emeritus status such that they are entitled to the disciplinary process established in O.A.C. 3335-5-04.

University declined. As such, the plaintiff filed suit against the University alleging, among other things, a violation of his Fourteenth Amendment rights:

> Plaintiff argues *** that he has been denied the opportunity to be designated a Professor Emeritus at the University. Plaintiff argues that [the Dean's] conduct constituted a material deprivation of that status and a taking of property in contravention of plaintiff's substantive rights under the Due Process Clause of the fourteenth amendment. We disagree.

*Samad*, 845 F.2d at 662. The Court noted that a "substantial, tangible harm and a material change to an employee's status" must occur before the employee possesses a viable claim based on the Fourteenth Amendment. *Id*. at 662-63. Importantly, the Court provided:

> *We cannot find anywhere in the record where Samad has alleged that the University or [the Dean] took any steps that significantly and materially impaired plaintiff's agreed employment status.* Virtually all of the plaintiff's § 1983 claims are founded upon intangible harms. *In fact, plaintiff is not able to make a claim alleging a substantive adverse action regarding his employment status.* This is because he had voluntarily entered into a settlement of employment disputes in February 1984 that called for his voluntary retirement or resignation at the conclusion of an agreed phase-down of his faculty status. *** *We specifically reject plaintiff's argument that he was denied his property rights when he was not granted emeritus status.*

*Id*. at 662-63 (emphasis added).

So, too, here the court must apply *Samad* to dismiss Plaintiff's Complaint. Like the plaintiff in *Samad*, Plaintiff had no employment relationship with OSU at the time his emeritus status was impacted—he had already been retired for nearly six years when OSU revoked his emeritus status. And, as OSU's rules, which are codified in the Ohio Administrative Code, make clear, emeritus status is merely an "honor given in recognition of sustained academic contributions to the university," not an employment relationship or other protected position in

6

and of itself. O.A.C. 3335-5-19(C). Therefore, he has not demonstrated—and is unable to demonstrate—any tangible harm upon which to base his claim.

Defendants anticipate that Plaintiff will argue he has suffered reputational damage, but the Sixth Circuit has held that "an individual has no constitutionally protected interest in reputation alone." *Garvie v. Jackson*, 845 F.2d 647, 652 (6th Cir.1988). Put more simply, Plaintiff would need to allege some type of change to his employment status to accompany his purported reputational harm in order to have a claim under the Fourteenth Amendment. Plaintiff cannot do so here. In fact, "the Sixth Circuit has interpreted an employee's liberty interest *** strictly by concluding that *nothing short of termination constitutes a constitutional violation*." *Gies v. Flack*, 495 F. Supp.2d 854, 867 (S.D.Ohio 2007) (sustaining Defendants' Motion for Summary Judgment on Plaintiff's Fourteenth Amendment Claim, noting that because Plaintiff's employment was not terminated, he had no claims based on deprivation of any interest protected by due process).

Plaintiff is also likely to argue that his purported reputational damage allegedly resulted in his loss of a textbook contract as well as his position as a Visiting Astronomer with the Space Telescope Science Institute ("STSI"). *See* Compl., ¶ 12. However, nowhere within his Complaint has Plaintiff alleged—nor can he allege—that either the textbook contract or his position with STSI were part of any type of employment status with OSU such that his supposed loss of either could serve as the basis for his claim. In sum, Plaintiff is unable to establish any change to his employment status with OSU upon which his Fourteenth Amendment claim can survive. Accordingly, dismissal of Plaintiff's Complaint is appropriate.

7

### B. Defendants Are Entitled To Qualified Immunity

As indicated in Paragraph 58 of his Complaint, Plaintiff has filed the instant suit against Defendants "in their individual capacity for damages." However, and notwithstanding Defendants' arguments that Plaintiff has failed to state a viable claim, Defendants are entitled to qualified immunity. "Qualified immunity shields federal and state officials from *** damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) *that the right was 'clearly established' at the time of the challenged conduct.*" *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 207, 179 L.Ed.2d 1149 (2011) (emphasis added). The court has discretion to address the "clearly established" element before addressing whether a constitutional violation actually occurred. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). On the issue of whether a constitutional right is clearly established, *Garvie* is instructive:

> We should focus on whether, at the time defendants acted, the rights asserted were clearly established by the Supreme Court or the courts of this federal circuit *** [D]efendants have qualified immunity *unless plaintiffs' rights were so clearly established when the acts were committed that any officer in the defendant's position, measure objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct*. *** These principles would indicate that despite plaintiff's general assertions of constitutional violation, *he must set out a particular and clearly established violation in order to prevail against a claim of qualified immunity*.

*Garvie*, 845 F.2d at 649 (emphasis added). Simply put, "[t]he issue is whether defendants could have reasonably concluded that their conduct would violate any clearly established statutory or constitutional law." *Farkas v. Ross-Lee*, 727 F.Supp. 1098, 1109–10 (W.D.Mich. 1989), aff'd, 891 F.2d 290 (6th Cir.1989); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867, 198 L.Ed.2d 290 (2017) ("[I]f a reasonable [official] might not have known for certain that the

conduct was unlawful — then the [official] is immune from liability.") "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct *in the particular circumstances before him*." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590, 199 L.Ed.2d 453 (2018) (emphasis added). Existing precedent "must have placed the unconstitutionality of the [official's] conduct beyond debate." *Id*. at 589.

Nowhere in his Complaint does Dr. Peterson allege that emeritus status is a "clearly established" right—nor can he—such that Defendants violated the Constitution in recommending it be revoked. To the contrary, and as noted above, emeritus status is explicitly defined in OSU's rules—and codified within the Ohio Administrative Code—as a purely honorific status that can be granted upon recommendation and removed by OSU at any time based on conduct or reputational concerns. *See* O.A.C. 3335-5-19(C) (defining emeritus status as an "honor given in recognition of sustained academic contributions to the university"); O.A.C. 3335-5-36. Indeed, nobody within Defendants' positions would have objectively believed their conduct in revoking this honorific title pursuant to the process laid out in OSU's rules to be unlawful, and Plaintiff is unable to demonstrate otherwise. As such, Defendants are entitled to qualified immunity, so Plaintiff's claim must, in the very least, be dismissed as it relates to Defendants' individual capacities.

### C. The Court Must Dismiss Defendant McPheron In His Official Capacity As He Lacks The Ability To Provide Plaintiff The Relief Requested

Though Defendants maintain that Plaintiff's claim cannot survive in the first place, this Court must, in the very least, dismiss Defendant McPheron in his official capacity from the instant matter. Specifically, in asserting a claim against a state official, "[t]he proper defendants *** *are the ones who have the power to provide the relief sought*." *Taaffe v. Drake*, S.D.Ohio

No. 2:15-CV-2870, 2016 WL 1713550, at *5 (Apr. 29, 2016) (emphasis added); *see also Ex parte Young*, 209 U.S. 123 (1908). Such is not the case with Defendant McPheron.

As Plaintiff notes in his Complaint, "Defendant Bruce McPheron, PhD, *was* *** Executive Vice President and Provost of OSU." *See* Compl., ¶ 5 (emphasis added). Nowhere within Plaintiff's Complaint does he allege that Defendant McPheron remains Executive Vice President and Provost for OSU—largely because he cannot.[3] Even assuming *arguendo* that Plaintiff is entitled to the relief he seeks, which Defendants maintain he is not, Defendant McPheron is unable to provide it. In other words, Defendant McPheron has no authority "[t]o reinstate Plaintiff's emeritus status *** [or] provide Plaintiff with a new disciplinary process that provides due process" or to grant any of the other relief requested within Plaintiff's prayer.[4] *See* Compl., Prayer for Relief. Accordingly, the Court should dismiss Defendant McPheron in his official capacity from the present suit.

## III. CONCLUSION

While Plaintiff may very well be disappointed in OSU's decision to revoke his emeritus status in response to the numerous allegations against him, such disappointment does not give rise to any viable cause of action against Defendants—or any other OSU personnel for that matter. As noted, Plaintiff had no property interest in his emeritus status at OSU, and his assertion to the contrary is based in neither fact nor law. As such, and for all of the reasons outlined herein, Defendants respectfully request the Court grant the instant Motion.

---

[3] In fact, Defendant McPheron has not been Executive Vice President and Provost at OSU for nearly a year, having served in that role from June 2016 through June 2021.

[4] Again, and as noted above, there is no disciplinary process to which Plaintiff can allege he is entitled because he has no employment relationship with OSU and did not have an employment relationship with OSU at the time his emeritus status was revoked.

Respectfully submitted,

*/s/ Catherine L. Strauss*
Catherine L. Strauss (0072980)
Abigail J. Barr (0092679)
ICE MILLER LLP
250 West Street
Columbus, Ohio 43215
Telephone: (614) 462-2700
Facsimile: (614) 462-5135
Catherine.Strauss@icemiller.com
Abigail.Barr@icemiller.com

*Counsel for Defendants Kristina M. Johnson, PhD, et al.*

11

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed via the Court's electronic filing system this 15th day of April 2022 which shall subsequently serve a copy of same upon all parties of record.

*/s/ Catherine L. Strauss*
Catherine L. Strauss (0072980)
