UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRADLEY M. PETERSON, PhD,**

    **Plaintiff,**

v.

    Case No. 2:22-cv-00276
    Judge Edmund A. Sargus, Jr.
    Magistrate Judge Chelsey M. Vascura

**KRISTINA M. JOHNSON, PhD, et al.,**

    **Defendants.**

## OPINION AND ORDER

This matter arises on Defendant Kristina M. Johnson's Motion to Dismiss Plaintiff's Complaint. (ECF No. 7). For the reasons stated below, Defendant's motion is **GRANTED**.

**A. Factual Background**

Dr. Peterson is a former employee of the Ohio State University's Astronomy department. (ECF No. 7, at 2) (ECF No. 11, at 2). Beginning his career at the University in 1979, Dr. Peterson worked his way up to become Chair of the Department of Astronomy, a position he held until his retirement in 2015. (ECF No. 11, at 2). Subsequent to his retirement, Dr. Peterson was granted the title of professor emeritus. (ECF No. 7, at 2). This title "is an honor given in recognition of sustained academic contributions to the university." O.A.C. 3335-5-19 (C).

Peterson continued his research after retirement. (ECF No. 7, at 2) (ECF No. 11, at 3). He also continued his relationship with OSU, returning in 2018 to teach full time. (ECF No. 7, at 2) (ECF No. 11, at 3). However, during this time Peterson was not classified as part of the normal, tenured faculty. (ECF No. 11, at 3). His return to the University lasted until 2021. (ECF No. 7, at 2—3) (ECF No. 11, at 7). During these three years the University began receiving complaints

regarding Peterson. (ECF No. 7, at 2–3) (ECF No. 11, at 3—5). Eventually, due to numerous complaints, the school launched a sexual harassment investigation into his conduct. (ECF No. 7, at 3) (ECF No. 11, at 5). Based on the results of this investigation, OSU disciplined Peterson pursuant to its Sexual Misconduct Policy 1.15. (ECF No. 7, at 3–4) (ECF No. 11, at 8). Peterson was stripped of his professor emeritus title and OSU terminated any relationship with him. (ECF No. 7, at 3–4) (ECF No. 11, at 8).

Peterson points to numerous problems with OSU's investigation. (ECF No. 11, at 5–7). He alleges that he was not informed of any investigation until after it had already commenced. (*Id.*, at 5). Peterson also alleges flaws in the University's investigation and in its report that resulted in an unfair investigation. (*Id.*). Specifically, some of the missteps Peterson accuses the lead investigator of include "(a) failing to include information Dr. Peterson provided in the investigation report; (b) failing to investigate if Dr. Peterson treated male employees similarly; (c) asking for names of or interviewing witnesses to support Dr. Peterson; (d) failing to conduct a thorough examination to support a finding that there was a long pattern of harassment; (e) including information that someone warned [Laura Lopez, an Assistant Professor of Astronomy at OSU, who would later accuse Dr. Peterson of sexual harassment] about Dr. Peterson without even asking for the source of this warning; (f) either not asking for or purposefully excluding from the report alleged correspondence documenting the harassment, but relying on it nonetheless; (g) failing to consider the modifications Dr. Peterson made following the discussion with the chair in 2018; (h) not investigating if the alleged harassment caused any actual harm; and (i) not interviewing other individuals who worked with Dr. Peterson during the alleged period of harassment." (ECF No. 11, at 6). Aside from these mistakes, Peterson alleges numerous other investigative flaws. (*Id.*, at 5–7). In sum, Peterson maintains the University

2

violated his due process rights by "(a) not providing him notice of the allegations against him; (b) not affording him a fair investigation with neutral and unbiased investigators and decision makers; (c) not providing him a hearing and the right to cross-examination even though the case involved allegations of sexual misconduct and hinged on credibility determinations; and (d) investigating complaints outside the jurisdiction of the Sexual Misconduct Policy." (ECF No. 11, at 9).

Although the title of professor emeritus does not come with pay, Peterson alleges that the University's decision to strip him of the title caused injury, nevertheless. Specifically, Peterson points to the following "protectable property interests" that the University took from him "without due process:" (ECF No. 11, at 8)

> "his emeritus status at OSU and all related benefits; (b) his position as Distinguished Visiting Astronomer at STScI; (c) loss of his large Hubble Space Telescope science program, which others will now complete and receive the recognition; (d) loss of his textbook contract with Cambridge University Press after six months of work on a second edition; and (e) permanent reputational damage and loss of earnings."

(*Id.*, at 8–9).

**B. Procedural Background**

On January 24, 2022, Plaintiff Bradley M. Peterson, PhD., filed a complaint in the Southern District of Ohio against Defendant Kristina M. Johnson, PhD and Bruce McPheron, PhD. (ECF No. 1, at 3). Plaintiff sued each Defendant in both their individual and official capacities as representatives of the Ohio State University. Peterson's action stems from the University's decision to remove him from his position as professor emeritus. Defendant filed the instant motion to dismiss on April 15, 2022. (ECF No. 7). Plaintiff Johnson responded on May 20. (ECF No. 11). Finally, Defendant replied on May 31. (ECF No. 12).

3

### C. Standard

Federal Rule of Civil Procedure 12 authorizes dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To meet this standard, the complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In considering a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Nonetheless, the Court must read Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8(a), requiring a short and plain statement of the claim showing that the plaintiff is entitled to relief. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 907 (S.D. Ohio 2013). Thus, the pleading's factual allegations, assumed to be true, must do more than create mere speculation or suspicion of a legally cognizable claim; they must show entitlement to relief. *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007). Further, "the tenet that courts must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 662. As such, while a plaintiff is not required to set forth detailed factual allegations at the pleading stage, a complaint must contain a basis upon which relief can be granted; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *See id*. at 679; Fed. R. Civ. P. 8(a).

*Lloyd v. Pokorny*, No. 2:20-cv-2928, 2020 U.S. Dist. LEXIS 162998 (S.D. Ohio Sep. 8, 2020).

### D. Analysis

Defendant Johnson maintains that Plaintiff's action must be dismissed for failure "to state a viable cause of action against Defendants for which he is entitled to relief." (ECF No. 7, at 4). Defendant makes three arguments. First, Defendant contends the Court must "dismiss Defendant McPheron in his official capacity from the instant matter," as McPheron is no longer employed

at OSU. (*Id.*, at 9). Second, "Plaintiff is unable to establish any change to his employment status with OSU upon which his Fourteenth Amendment claim can survive." (ECF No. 7, at 7). And finally, Defendant argues qualified immunity bars Plaintiff's suit against Johnson and McPheron in their individual capacities. (*Id.*, at 8). Plaintiff, on the other hand, maintains that dismissal is not warranted. (ECF No. 11, at 2). The Court agrees with Defendant.

    a. **Substitution**

As a threshold matter, the Court will deal with Defendant's third argument. Defendant claims the Court must dismiss Defendant McPheron in his official capacity, as he is no longer employed as Executive Vice President and Provost of OSU. (ECF No. 7, at 9). Defendant is correct that Defendant McPheron, in his official capacity, is no longer a proper defendant. However, rather than dismissing the action against McPheron, the Court will simply substitute him with his successor, Dr. Melissa Gilliam. "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution." *See* Fed. R. Civ. P. 25(d).

    b. **Fourteenth Amendment**

Defendant Johnson maintains Plaintiff's action must be dismissed because he cannot demonstrate any deprivation of rights guaranteed by the Fourteenth Amendment. Johnson argues Plaintiff lacks a "constitutionally protected property interest in his emeritus status." (ECF No. 7, at 5). Plaintiff disagrees, arguing that emeritus status is a protectable property interest.

5

(ECF No. 11, at 11). This issue appears to be one of first impression. The Court could find no other example of any individual alleging a protected legal interest in their professor emeritus title. However, despite the lack of fact-specific precedent, *Peterson cannot sufficiently allege that he was deprived of a protected property interest without due process of law to withstand this Rule 12(b)(6) motion.

To "prevail on the claim that he was unconstitutionally deprived of his property" Peterson is required to prove he was entitled to a protected property interest. *Gunasekera v. Irwin*, 551 F.3d 461 (6th Cir.2009).¹ Without such an interest, the claim cannot survive. Protected interests, while ensured by the Constitution, are not prescribed by it. Instead, they usually stem from state law. "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 1972). Additionally, "constitutionally protected property interests can be created by either explicit or implied contractual terms." *Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1271 (6th Cir. 1988).

Here, Plaintiff does not cite to any state laws naming or implying a property interest in emeritus status. However, Plaintiff does cite to caselaw, making particular use of *Smock v. Bd.*

---

¹ Plaintiff must "'establish three elements; (1) that [he] ha[s] a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . . , (2) that [he] w[as] deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford [him] adequate procedural rights prior to depriving [him] of [his] protected interest.'" *Gunasekera v. Irwin*, 551 F.3d 461 (6th Cir.2009) citing *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (*quoting* Hahn v. Star Bank, 190 F. 3d 708, 716 (6th Cir. 1999), cert. denied, 529 U.S. 1020, 120 S. Ct. 1423, 146 L. Ed. 2d 314 (2000)).

of Regents of Univ. of Michigan, 353 F. Supp.3d 651 (E.D.Mich.2018) and *Gunasekera v. Irwin*, 551 F.3d 461 (6th Cir. 2009). In those cases, employment privileges, sabbatical time and a summer stipend, were allegedly stripped from tenured professors without due process. *Id*. In each, courts found that these privileges were protected property interests. Plaintiff uses *Smock* and *Gunasekera* to argue that, like a sabbatical, his emeritus status was an employment privilege, and therefore a property interest.

Plaintiff's reliance on these two cases is misplaced, as both are distinguishable from the issue at hand. The plaintiffs in *Gunasekera* and *Smock* were employed by their Universities at the time of their discipline. "[T]he plaintiffs in *Gunasekera* and *Smock* were tenured, employed faculty with their respective universities at the time they suffered their alleged discipline." (ECF No. 12, at 3–4). As a condition of employment, both plaintiffs were entitled to certain privileges. *Smock v. Bd. of Regents of Univ. of Michigan*, 353 F. Supp.3d 651 (E.D.Mich.2018); *Gunasekera v. Irwin,* 551 F.3d 461 (6th Cir. 2009).

The loss of these privileges altered Gunasekera and Smock's employment relationship with their universities. Peterson, on the other hand, was not employed, let alone tenured, by the University at the time he was disciplined. (ECF No. 11, at 2). His loss of emeritus status did not alter his legal or contractual relationship with OSU in any way. He was retired from OSU before he was disciplined, and he remained retired after.

Plaintiff's attempt to argue that emeritus status was a privilege he had earned through his long service to OSU fails for lack of support. (ECF No. 11, at 12). As Defendant points out, emeritus status is not in fact a privilege "to which he was entitled… due to his former employment "as a full-time tenured faculty member who dedicated over twenty-five years of service to OSU." *Id*. Instead, emeritus status is given discretionarily. OSU's bylaws support

7

this interpretation.  They provide that professors "may request emeritus status upon retirement or resignation," not that professors are ever entitled to emeritus status.  OSU's Bylaws & Rules, Ohio Admin. Code 3335-5-36 (A).  Further, even after a professor has requested emeritus status, he/she is not entitled to the title.  Their request could easily be denied.  Emeritus status is "recommended by the TIU head, the dean, and the executive vice president and provost, and approved by the board of trustees."  OSU's Bylaws & Rules, Ohio Admin. Code 3335-5-36 (B).

The bylaws also refer to emeritus status as an "honorific," further cutting against the argument that it confers some type of employment relationship with the recipient.  OSU's Bylaws & Rules, Ohio Admin. Code 3335-5-36 (C).  Professors with the emeritus title "are not expected to perform faculty duties… nor do they retain the specific powers of the faculty."  OSU's Bylaws & Rules, Ohio Admin. Code 3335-5-36 (C).  These bylaws indicate emeritus status does not confer employment at OSU.  As a discretionary honor that is not mandated or affected by the conditions of his employment, Plaintiff never had a protected property interest in his status.

Even if Plaintiff did have a protected property interest in his emeritus status, his claim would still fail.  To obtain relief, a plaintiff alleging a due process violation in the employment context must show that their employment status has been altered.  "[T]here must be a substantial, tangible harm and a material change to an employee's status before the employee possesses a viable § 1983 cause of action based upon the fourteenth amendment." *Samad v. Jenkins*, 845 F.2d 660 (6th Cir. 1988).  There was no such change here.  Plaintiff retired from OSU in 2015 (ECF No. 11, at 2).  His employment relationship with the University ended that year.  The University's actions in 2021, stripping Peterson of his title, did not alter that relationship.  Further,

As Plaintiff never had an entitlement to his emeritus status, Peterson cannot sufficiently allege that he was deprived of a protected property interest without due process of law to withstand this Rule 12(b)(6) motion. He cannot show his entitlement to relief. As such, Peterson's complaint is **DISMISSED**.

### c. Qualified Immunity

Defendant Johnson maintains Plaintiff's action against Johnson and McPheron in their individual capacities must be dismissed because it is barred by qualified immunity. The Court need not decide this issue as Plaintiff's complaint failed to state any claim upon which relief may be granted.

### d. Name Clearing

Further, Plaintiff is not entitled to an opportunity to clean his name. A name clearing hearing occurs "when a 'nontenured employee shows that he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment.'" *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Circuit 2002) quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989). In such cases, "the employer is required to afford him an opportunity to clear his name." *Id*. Plaintiff is not entitled to such an opportunity here.

Name clearing requires more than reputational damage, it requires a change in employment or legal status. "[D]efamation alone is not enough to trigger this constitutional protection; rather, the alleged damage must be tied to '[s]ome alteration of a right or status 'previously recognized by state law.'" *Crosby v. University of Kentucky*, 863 F.3d 545 (6th Cir. 2017) quoting *Quinn*, 293 F.3d at 319 (quoting *Paul v. Davis*, 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405). "Among the protected liberty interests are '[a] person's reputation, good name, honor, and

9

integrity.'" *Kaplan v. University of Louisville*, 10 F.4th 569 (6th Circuit 2021) (quoting *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002)) (quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989)). "Some alteration of a right or status 'previously recognized by state law,' such as employment, must accompany the damage to reputation" to make out a due process violation. *Id*. (quoting *Paul v. Davis*, 424 U.S. 693, 711, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976))." *Kaplan v. University of Louisville*, 10 F.4th 569 (6th Circuit 2021).

Here, as mentioned above, Peterson's employment status did not change when OSU stripped him of his emeritus status.  Further, emeritus status does not appear to be recognized by state law.  Finally, as mentioned by OSU's own bylaws, emeritus status is merely "honorific." OSU's Bylaws & Rules, Ohio Admin. Code 3335-5-36 (C).  As such, the loss of an emeritus title is unlikely to constitute an alteration of a right or status as contemplated by the court in *Crosby*.  Plaintiff's claim fails.

### E.  Conclusion

For the reasons stated above, Defendant's motion is **GRANTED**.  (ECF No. 7).  The Court **DISMISSES** Plaintiff's claim without prejudice.  Further, the Court **SUBSTITUTES** Defendant McPheron, in his official capacity, with his successor, Dr. Melissa Gilliam.


**IT IS SO ORDERED.**


**3/21/2023**                                                                                            **s/Edmund A. Sargus, Jr.**
**DATE**                                                                                                  **EDMUND A. SARGUS, JR.**
                                                                                                                    **UNITED STATES DISTRICT JUDGE**